UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHANIE M. URIE, | ) | |
| Plaintiff | ) | Civil Action |
| | ) | File No. _____ |
| v. | ) | |
| | ) | |
| YALE UNIVERSITY, | ) | |
| Defendant | ) | |
| | ) | |

## COMPLAINT

Plaintiff Stephanie M. Urie complains of defendant Yale University as follows.

### Jurisdiction and Parties

1. Plaintiff Stephanie Urie is a resident of Jeffersonville, Vermont.

2. On information and belief, Defendant Yale University ("Yale") is a corporation organized under the laws of Connecticut and with its principal place of business in New Haven, Connecticut. On information and belief, Yale is a private institution of higher education that accepts federal funding.

3. This action arises in part under the law of the United States, 20 U.S.C.A. §§ 1681 et seq. This Court has original jurisdiction over the subject matter of these claims pursuant to 28 U.S.C.A §§ 1331 and 1338.

4. This Court also has jurisdiction on grounds of diversity of citizenship, 28 U.S.C.A. § 1332.

5.  This Court has supplemental jurisdiction over the subject matter of plaintiff's common law claims pursuant to 28 U.S.C.A. § 1367, as those claims are so related to the federal claims that they form part of the same case or controversy.

6.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

### General Allegations

7.  In 1996, Yale Divinity School ("YDS"), a graduate level professional school within Yale, hired Gilbert I. Bond ("Bond") as an associate professor of Theology and African American Studies.

8.  In his capacity as an associate professor, Bond was encouraged and expected by YDS to engage in mentoring relationships with YDS students.

9.  Upon information and belief, in or about 1997, YDS faculty members and administrators became aware that Bond had entered into a sexual relationship with a female student he was mentoring, that resulted in emotional, sexual and physical abuse inflicted by Bond on the student.

10. Upon information and belief, from 1997 to the present, Yale had knowledge that Bond had engaged in gender discrimination and sexual harassment towards female students, and failed to take reasonable action to prevent the recurrence of gender discrimination and sexual harassment.

11. Plaintiff attended YDS beginning in the fall of 1999 and received her Master's of Divinity degree in May 2002.

12. Plaintiff was employed by Yale as a teaching fellow between September 2000 and May 2003.

13. Plaintiff was mentored during her master's program by Bond, who offered her professional and spiritual guidance and encouragement, serving as a potentially invaluable resource for references, job contacts and professional networking.

14. Upon information and belief, YDS faculty members and administrators were aware of the mentoring relationship between Plaintiff and Bond, and some of those individuals encouraged that relationship.

15. Upon information and belief, certain YDS faculty members and administrators voiced concerns that Bond was using his relationship with Plaintiff to engage in gender discrimination and sexual harassment.

16. Despite the concerns of YDS faculty members and administrators, YDS failed to warn Plaintiff about Bond's propensity to engage in gender discrimination and sexual harassment. Bond was neither discouraged nor restrained by YDS or Yale from engaging in this propensity.

17.     Prior to June 2002, Plaintiff was unaware of Bond's propensity to engage in gender discrimination and sexual harassment with female students whom he mentored.

18.     In June 2002, Bond asked Plaintiff to meet him in Boston on the pretext of discussing a professional opportunity for Plaintiff.

19.     While in Boston, Bond manipulated Plaintiff by taking advantage of the trust he had gained from her as her YDS mentor, as well as a YDS religious and academic professional, and engaged in coercive sexual relations with Plaintiff.

20.     Plaintiff reported Bond's sexual coercion and gender discrimination in Boston to a senior member of the YDS faculty in or about August 2002 and, through the autumn of 2002, to members of both the YDS administration and faculty.

21.     After receiving this further notice as to Bond's sexual coercion and gender discrimination, YDS administration and faculty did not act to protect Plaintiff or other YDS female students, including those female students whom Bond was mentoring at the time.

22.     Despite notice and concern about Bond's behavior, YDS failed to enforce Yale's policy prohibiting sexual relations between faculty and students or to enforce its own policy, which recognizes that such relations are "inherently coercive" and presumptively constitute sexual harassment.

23. Plaintiff filed a formal complaint against Bond with YDS in April 2003, and YDS accepted that complaint.

24. During the 2002-2003 academic year, Bond repeatedly engaged in intimidating behavior towards Plaintiff.

25. Despite Plaintiff's formal complaint in April 2003 and her requests for reasonable accommodations, Yale failed to take any measures to protect Plaintiff from Bond's continued presence on the YDS campus.

26. Plaintiff did not renew her teaching fellowship or return to Yale for the fall 2003 semester because of Bond's continued presence on the YDS campus and her fear of Bond.

27. Plaintiff has also been precluded from participating in any of the many activities offered by Yale to its alumni and to the general public by her justifiable fear of encountering Bond at those events or on the Yale campus.

## COUNT I:  TITLE IX, FAILURE TO PROTECT

28. Plaintiff repeats and realleges each of Paragraphs 1- 27 above as though they were set out in full herein.

29. Upon information and belief, Yale and YDS had actual knowledge of Bond's tendency towards violence, his gender discrimination and sexual harassment of female students.

30. The faculty and administration of Yale and YDS knew that Bond had earlier engaged in gender discrimination and sexual harassment with one or more female YDS students.

31  Yale had a duty to protect Plaintiff from the known danger of gender discrimination and sexual harassment by Bond.

32. Yale's failure to protect Plaintiff caused her to be sexually abused by Bond in June 2002.

33. Plaintiff has suffered physical, emotional, psychological and economic harm as the result of Yale's failure to protect her from Bond.

34. As a direct result of Yale's failure to protect Plaintiff, she has, on the basis of gender, been excluded from participation in, been denied the benefits of, and has been subjected to discrimination under Yale's educational and alumni programs as well as with respect to her employment and opportunities for employment with Yale.

## COUNT II:  TITLE IX, HOSTILE ENVIRONMENT

35. Plaintiff repeats and realleges each of Paragraphs 1- 34 above as if they were set out in full herein.

36. Yale's failure to take adequate measures to protect Plaintiff from Bond on campus created a hostile and intolerable educational and work environment.

37. Plaintiff completed her teaching fellow responsibilities in the spring of 2003 but was forced to decline additional employment and educational opportunities as a teaching fellow for the 2003-2004 academic year because of her reasonable fear and apprehension created by the hostile educational and work environment.

38. Plaintiff has suffered physical, emotional, psychological, educational, professional and economic harm as the result of the hostile work and educational environment created by Yale.

## COUNT III: TITLE IX, RETALIATION

39. Plaintiff repeats and realleges each of Paragraphs 1-38 above as if they were set out in full herein.

40. Bond has retaliated against Plaintiff in the workplace for her participation in the sexual harassment complaint process.

41. Bond has threatened to take legal action against Plaintiff as a result of her statements in filing the complaint and subsequent communications relating to the complaint.

. 42. Upon information and belief, Yale and YDS were aware of Bond's retaliatory actions against Plaintiff, but Yale did not take effective action to halt Bond's retaliation.

43. Plaintiff has suffered physical, emotional, psychological, educational, professional and economic harm as the result of Yale's failure to take effective action to halt retaliation by Bond against her.

## COUNT IV: FAILURE TO PROVIDE ADEQUATE AND PROMISED SEXUAL HARASSMENT COMPLAINT PROCESS

44. Plaintiff repeats and realleges each of Paragraphs 1- 43 above as if they were set out in full herein.

45. YDS agreed to extend its sexual harassment complaint procedure to Plaintiff in response to her April 2003 complaint because sexual harassment complained of arose out of her student-mentoring relationship with Bond and because Plaintiff remained at Yale as a teaching fellow.

46. Yale has not provided Plaintiff with the complaint procedures promised to her and on which she relied to her detriment in the decision to bring her complaint forward.

47. Yale has failed to implement and comply with its sexual harassment policies as well as the specific procedures Yale promised to provide to Plaintiff.

48. As a direct result of Yale's failure to provide the promised sexual harassment complaint procedures to Plaintiff, she has been excluded from participation in, been denied the benefits of, and has been subjected to discrimination under Yale's educational and alumni

programs as well as with respect to her employment and opportunities for employment with Yale.

49. Plaintiff has suffered physical, emotional, psychological, educational, professional and economic harm as the result of the hostile work and educational environment created by Yale as well as by its failure to implement its sexual harassment policies and the sexual harassment complaint process promised to her by the YDS administration.

## COUNT V:  NEGLIGENT SUPERVISION AND RETENTION

50. Plaintiff repeats and realleges each of Paragraphs 1- 49 above as if they were set out in full herein.

51. Upon information and belief, Yale and YDS had actual knowledge of Bond's propensity for engaging in gender discrimination and sexual harassment with respect to female students and employees.

52. By the fall semester of 2002, YDS administrators and faculty members were aware that Bond had engaged in gender discrimination and sexual harassment in the form of coercive sexual relations with Plaintiff.

53. Given Yale's knowledge of Bond's behavior, it was reasonably foreseeable that Bond would engage in gender discrimination and sexual harassment of students and employees.

54. Yale consequently had a duty to remove Bond from his position, to prevent him from having close contact with female students, teaching fellows, employees and alumna or to implement other measures that would be effective in protecting female students, teaching fellows, employees and alumna.

55. Yale breached that duty by retaining Bond as an associate professor without limitation upon his activities and by continuing to encourage and expect him to mentor female students and employees, including Plaintiff.

56. As a result of Yale's negligent supervision and retention of Bond, Plaintiff has suffered physical, emotional, psychological, educational, professional and economic harm.

## COUNT VI:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

57. Plaintiff repeats and realleges each of Paragraphs 1- 56 above as if they were set out in full herein.

58. Yale knew or should have known that its actions in failing to remove Bond from his position, failing to follow its sexual harassment complaint procedures with respect to Plaintiff, and failing to provide Plaintiff with any reasonable accommodations after her complaint against Bond involved an unreasonable risk of causing her to suffer emotional distress.

59. Yale knew or should have realized that the emotional distress suffered by Plaintiff might result in illness or bodily harm.

60.     As a consequence of Yale's conduct, Plaintiff has suffered emotional distress resulting in illness.

## COUNT VII:  VICARIOUS LIABILITY

61.     Plaintiff repeats and realleges each of Paragraphs 1-60 above as if they were set out in full herein.

62.     Bond committed intentional sexual assault when he engaged in coercive sexual relations with Plaintiff.

63.     Bond's conduct occurred in the course and scope of his employment with Yale and with a purpose to serve his employer.

64.     Yale is therefore vicariously liable for Bond's intentional sexual assault of Plaintiff.

WHEREFORE, Plaintiff Stephanie Urie demands judgment against Defendant Yale University and an award of compensatory damages, punitive damages, attorney's fees, and costs, as well as all other relief to which she may be entitled, totaling in excess of $75,000.00 (Seventy-Five Thousand and 00/100).

**Demand for Jury Trial**

Plaintiff hereby demands trial by jury with respect to all claims so triable.

DATED:     Burlington, Vermont this ___ day of January, 2004.

                        Respectfully submitted,

                        RYAN, RYAN, JOHNSON & DELUCA, LLP
                        P.O. Box 3057
                        80 Fourth Street
                        Stamford, CT 06905


By:     _____
        Catherine S. Nietzel, Esq. (CT 05255)

        Stephen G. Norten, Esq.
        Elizabeth J. Grant, Esq.
        PAUL, FRANK & COLLINS
        One Church Street
        P.O. Box 1307
        Burlington, VT 05401-1307
        (802) 658-2311

        Attorneys for Plaintiff Stephanie Urie