UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHANIE URIE, | : | DOCKET NO. 3: 04 CV 00094 (GLG) |
| Plaintiff, | : | |
| -against- | : | |
| YALE UNIVERSITY, | : | |
| Defendant. | : | |
| | : | JUNE 4, 2004 |

DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

In responding to defendant Yale University's ("Yale") motion to dismiss her complaint, which brought claims under Title IX and Connecticut common law stemming from an alleged sexual encounter with Yale Divinity School professor Gilbert Bond ("Bond"), plaintiff Stephanie Urie ("Plaintiff") faced an insurmountable hurdle. Under the governing law, it is clear that private claims of employment discrimination in educational institutions must be brought under Title VII and not under Title IX. Moreover, Plaintiff's own Complaint makes evident that she was (at most) an employee of Yale at the time of the allegedly discriminatory behavior, and that her claim could only be for employment discrimination. Thus, as explained in Yale's opening brief, Title VII preemption applies squarely to defeat Plaintiff's federal claims.

Having no legitimate path to contest the conclusion that the allegations in her Complaint do not support claims under Title IX, Plaintiff chose another route. In her opposition memorandum, Plaintiff introduced new (and dramatically inconsistent) factual allegations concerning the alleged discrimination; invented a new, hybrid status for herself in an attempt to escape Title VII preemption; and misread a host of cases in an effort to sustain her Title IX claims.

In the end, however, Plaintiff's efforts are to no avail. Regardless of these last-minute smokescreens, her Complaint is clear, and the relevant case law clearer still. Because Plaintiff has not stated any claim against Yale under Title IX or Connecticut common law, her Complaint should be dismissed.

## I. Title VII Preempts All Of Plaintiff's Title IX Claims.

### A. Title VII Preempts Private Claims Of Employment Discrimination Under Title IX.

Under the majority line of cases, any claim for employment discrimination under Title IX is preempted by Title VII and its "carefully balanced remedial scheme." Lakoski v. James, 66 F.3d 751, 754 (5th Cir. 1995).[1] Though Plaintiff argues that Cannon v. University of Chicago, 441 U.S. 677 (1979), North Haven Board of Education v. Bell, 456 U.S. 512 (1982), and Franklin v. Gwinnett Public Schools, 503 U.S. 60 (1992), suggest a contrary result (see Pl.'s Opp'n at p. 7), none of these cases required the Supreme Court to address the relationship between Title VII and Title IX. Significantly, the same is true of most of the cases that Plaintiff inaccurately cites as "rejecting" Lakoski. See Mandsager v. Univ. of North Carolina at Greensboro, 269 F. Supp. 2d 662 (D.N.C. 2003); Bedard v. Roger Williams Univ., 989 F. Supp. 94 (D.R.I. 1997); Nelson v. Univ. of Maine Sys., 923 F. Supp. 275 (D. Me. 1996); Clay v. Bd. of Trustees of Neosho County Comm. Coll., 905 F. Supp. 1488 (D. Kan. 1995); see also Bowers v. Baylor Univ., 862 F. Supp. 142 (W.D. Tex. 1994) (overruled by Lakoski) (cited in Pl.'s Opp'n at pp. 8-10).

To be sure, Plaintiff does cite several cases in which courts have identified a private right of action for employment discrimination under Title IX. As discussed in Yale's opening brief,

---

[1] Many other courts, including numerous district courts within the Second Circuit, have adopted Lakoski's well-reasoned view. (See Def.'s Mem. at pp. 7-9 and cases cited therein.) Plaintiff has simply ignored this impressive array of opinions, failing even to discuss them.

-2-

though, these cases are poorly reasoned (or not reasoned at all) and should be disregarded in favor of the Lakoski line of cases.  (See Def.'s Mem. at pp. 7-11.)  Accordingly, because Plaintiff's putative Title IX claims actually arose under Title VII, they are preempted and should be dismissed.

> B.   Plaintiff's New Factual Allegations Concerning Earlier Harassment Are Directly Contradicted By The Allegations In Her Complaint.

Plaintiff now asserts that Bond's alleged harassment began prior to her graduation and therefore that she should be considered a student, not an employee, for purposes of her Title IX claims.  (See Pl.'s Opp'n at pp. 4-5, 6, 7, 11.)  Plaintiff's Complaint, however, contains no such allegation.  Indeed, the Complaint directly contradicts this claim, alleging that "*Prior to June 2002* [the month after her graduation], *Plaintiff was unaware* of Bond's propensity to engage in gender discrimination and sexual harassment . . . ."  (Compl. at ¶ 17 (emphasis added).)  The Complaint also alleges that, while Plaintiff was a student at Yale, Bond "offered her professional and spiritual guidance and encouragement" and a valuable "mentoring relationship."  (See Compl. at ¶ 13.)  It is Plaintiff's Complaint, not her brief, that must be taken as true for purposes of this motion.  See Friedl v. City of New York, 210 F.3d 79, 83-84 (2d Cir. 2000) (holding that it is error for district court to rely on factual allegations contained in legal briefs or memoranda).

> C.   Plaintiff's Claim That "Teaching Fellows" Are Not Employees Has No Foundation In Fact Or Law.

Plaintiff next argues that her Title IX claims should not be preempted because, as a "teaching fellow," she had an unspecified "educational relationship" with Yale that survived her graduation in May 2002.  Though Plaintiff attempts to draw a distinction between a "teaching fellow" and an "employee," the label attached to her status is irrelevant.  Rather, for purposes of the preemption inquiry, the question is whether Plaintiff is seeking to vindicate rights created by Title VII, as "[i]t is well-established that Title VII's own remedial mechanisms are the only ones

-3-

available to protect the rights created by Title VII." Waid v. Merrill Area Pub. Schs., 91 F.3d 857, 862 (7th Cir. 1996) (citing Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372-78 (1979)). Regardless of how Plaintiff chooses to characterize her post-graduation status, the Complaint makes clear that her only relationship with Yale after May 2002 consisted of the obligation, in the following academic year, to educate Yale's students. (See Compl. at ¶¶ 11-12.)[2]

In any event, Plaintiff has cited no authority declining to recognize a non-student "teaching fellow," or any other type of university instructor, as an employee. Rather, all the cases she cites involved graduate students enrolled in degree-granting programs who also taught. See Yale Univ. and Graduate Employees & Students Org., 330 NLRB No. 28, at 254 (1999) (quoting Yale President Richard Levin as stating that graduate students who also teach are not considered employees of the University); Crue v. Aiken, 204 F. Supp. 2d 1130, 1140 (C.D. Ill. 2002) (holding that plaintiff who was a graduate student and a teaching assistant was a student); Knee v. Unemployment Compensation Bd. of Review, 415 A.2d 1008, 1009 (Pa. Cmwlth. 1980) (same). (See Pl.'s Opp'n at 6.) None of these decisions says anything about instructors who, like Plaintiff, were not students when the underlying events occurred.

## II. Even If Plaintiff's Title IX Counts Were Not Preempted By Title VII, They Fail To State Claims For Which Relief May Be Granted.

Plaintiff alleges three different theories for Title IX liability: failure to protect, hostile environment, and retaliation. Even if Title VII did not preempt these causes of action, none states a claim upon which relief may be granted.

---

[2] Of course, the notion that Plaintiff may have derived some tangential educational benefit from her work as a teaching fellow is irrelevant to the question whether she was an employee, and as such required to bring any claim for discrimination under Title VII. All teachers – indeed, all employees – presumably learn on the job, and this ongoing education has never been considered sufficient to transform them from "employees" to something else.

      A.     <u>Plaintiff's Allegations Do Not State A Claim For Failure To Protect</u>.

The Complaint makes clear that, when the alleged discrimination that forms the basis of Plaintiff's failure to protect claim occurred – the alleged June 2002 sexual assault – Plaintiff had no relationship with Yale whatsoever, as either a student or an employee. She ceased being a student upon her May 2002 graduation from Yale Divinity School, and she did not become an employee until the following academic year. Her status is easily distinguishable from one who, like a student or employee on "summer vacation" or "holiday break," has an ongoing, uninterrupted relationship with a school. (<u>See</u> Pl.'s Opp'n at 12.)

      B.     <u>Plaintiff's Allegations Do Not State A Claim For Hostile Environment</u>.

In her Opposition, Plaintiff clarifies that her hostile environment claim is based on the allegation that "despite her requests for reasonable accommodations [in April 2003], Yale failed to take adequate measures to protect her from Bond's continued presence on the YDS campus." (Pl.'s Opp'n at p. 13.) Notably, though, Plaintiff has not alleged what accommodations she requested or any facts that might support an inference that Bond's alleged "intimidation" was sufficiently severe or pervasive to alter the conditions of her employment or create an abusive work environment. Rather, in her brief, she compares her situation to several cases in which women were forced to work or study with, and in some instances under the direct supervision of, men who had previously assaulted them. (<u>See</u> Pl's Opp'n at pp. 11-13.)

In this case, however, there are no allegations that Plaintiff was forced to work with or near Bond, that she worked under his supervision, or even that they worked at the same

institution within Yale.³  Thus, unlike in the cases relied on by Plaintiff, there was no definable "environment" that could have been rendered hostile due to Yale's alleged failure to protect her let alone one whose abuse was sufficiently severe and pervasive.  See Cortes v. Maxus Exploration Co., 977 F.2d 195, 199 (5th Cir. 1992); Ellison v. Brady, 924 F.2d 872, 882 (9th Cir. 1991); Marshall v. Golfview Dev. Ctr., Inc., 2001 WL 648628 (N.D. Ill. 2001) (alleged harasser shared an office with the alleged victim); see also Patricia H. v. Berkeley Unified Sch. Dist., 830 F. Supp. 1288, 1294 (N.D. Cal. 1993);  Kelly v. Yale Univ., 2002 WL 1563424, *1 (D. Conn. 2003) (alleged victims were at the same school and living within the same dormitory).  (See Pl.'s Opp'n at pp. 12-13.)

Moreover, unlike all of the cases she cites, Plaintiff has not identified what accommodations she requested in April of 2003 or specified how Yale allegedly failed to provide them.  (See Pl.'s Opp'n at pp. 11-13.)   In fact, she has pointed to no case in which a court sustained a hostile environment claim based on allegations as vague and conclusory as those contained in her Complaint.

       C.     Plaintiff's Allegations Do Not State A Claim For Retaliation.

For the reasons set forth in Yale's opening brief, the Court should find that Title IX provides no right of action for retaliation.  Even if the Court finds otherwise, though, Plaintiff's retaliation claim should be dismissed.  Plaintiff's retaliation claim consists, in its entirety, of the following allegations: Plaintiff filed a complaint against Bond; he threatened to take legal action against her; and Yale knew of this threat but "did not take effective action to stop it."  (See Compl. at ¶¶ 40-42; Pl.'s Opp'n at p. 15.)  Plaintiff's Opposition confirms that Bond's alleged

---

³ Of course, Plaintiff may seek to amend her Complaint to allege that she and Bond were co-workers, or that he had some supervisory authority over her.  There is no basis in the

threat to sue her, never carried out, forms the entire basis of her retaliation claim. (Pl.'s Opp'n at p. 15.)

Plaintiff has not alleged any of the three required elements of a retaliation claim: protected conduct, adverse action, and causal connection. First, Plaintiff's April 2003 report of Bond's alleged assault does not constitute protected conduct under Title IX because, for the reasons discussed in Section II.B., supra, the assault was not a violation of Title IX. Second, Bond's unfulfilled threat to sue Plaintiff does not constitute an adverse action, and cannot be attributed to Yale in any event. See, e.g., Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1381 (10th Cir. 1994) (holding that a threat that is never carried out does not constitute an adverse action).[4] Third, and finally, even if Plaintiff had alleged that Yale took some adverse action against her, she would also have to allege, as she obviously has not done, that Yale did so because she had engaged in conduct that is protected by Title IX.

### III. None Of Plaintiff's State Law Counts States A Claim For Which Relief Can Be Granted.

A.  <u>Plaintiff Has Failed To State A Claim For Breach Of Contract</u>.

Plaintiff failed in her Complaint to allege any of the necessary elements of a breach of contract, instead supplying only a vague reference to "complaint procedures" that Yale allegedly failed to provide. The Complaint did not explain what those procedures were, where they were located, how Yale breached them, or how Plaintiff was damaged. These omissions are fatal to Plaintiff's purported contract claim. See Timmons v. City of Hartford, 283 F. Supp. 2d 712 (D. Conn. 2003).

---

Complaint whatsoever for inferring that such allegations could be made consistently with Rule 11, or even that Plaintiff's teaching fellowship was at the Divinity School.

Here, again, Plaintiff's brief alleges facts that her Complaint does not, claiming that Yale's alleged promise was contained in its "handbooks, catalogs, and other publications." (Pl.'s Opp'n at p. 15.)  Even if this Court were not precluded from considering these new allegations, see Friedl, 210 F.3d at 83-84, her allegations remain far too vague to sustain a breach of contract claim.  Neither the Complaint nor the Opposition sufficiently alleges even the most basic element of a breach of contract claim, "the provisions of the written agreement upon which the claim of breach is based."  Timmons, 283 F. Supp. 2d at 719.

Plaintiff's Count IV fares no better as a promissory estoppel claim, as she now chooses to characterize it, for she has alleged neither element of such a claim: a "clear and definite promise" by Yale, and her detrimental reliance thereon.  See D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch., 202 Conn. 206, 213 (1987) (dismissing promissory estoppel claim because plaintiff had not alleged a clear and definite promise that the defendant could reasonably have expected to induce the plaintiff's reliance).

### B.  Plaintiff Has Failed To State A Claim For Negligent Infliction Of Emotional Distress.

Plaintiff's negligent infliction of emotional distress claim is based entirely on events that occurred while she was a Yale employee.  The claim, therefore, is barred by the rule of Parsons v. United Technologies Corp., 243 Conn. 66, 88 (1997), which outlaws claims of negligent infliction of emotional distress in the employment context unless based upon unreasonable conduct in the termination process.  Plaintiff has not alleged any unreasonable conduct in the termination process.

---

[4] Plaintiff's allegation that Yale failed to take action against Bond begs the question of precisely what action Yale could have, or should have, taken to prevent the threat of a private lawsuit by an individual who believed he was being defamed.

Plaintiff's only response to Parsons's clear (and clearly applicable) holding is, in effect, to ask the Court to carve out an exception for employees of educational institutions. (See Pl.'s Opp'n at 18-19.) There is no basis for doing so. Connecticut courts have never recognized an exception to Parsons for any type of employment, and educational employers are hardly unique insofar as emotional distress claims are concerned. Indeed, Plaintiff's allegation that Yale improperly handled her sexual discrimination complaint is indistinguishable from charges that could be levied against any employer.

### C. Plaintiff Has Failed To State A Claim For Negligent Supervision And Retention.

Plaintiff's inability to state a claim for negligent infliction of emotional distress also dooms her negligent supervision and retention claim. In order to state a claim for negligent supervision or retention, Plaintiff must: (1) allege that Yale knew or had reason to know that Bond had a propensity to engage in tortious conduct and (2) state a claim for negligent infliction of emotional distress. Golnik v. Amato, 299 F. Supp. 2d 8, 19 (D. Conn. 2003). Plaintiff cannot satisfy either requirement.

Golnik provides an apt analogy, as the complaint dismissed in that case appears strikingly similar to Plaintiff's Complaint here. Judge Burns observed:

> The sole, conclusory contention as to alleged "tortious conduct" is that [the] Defendants had received complaints regarding [the alleged victimizer's] "unprofessional and outrageous behavior with Plaintiff and others." Nowhere are the "others" identified, just as [the] unprofessional and outrageous conduct as to these "others" is not set forth in any substantive, factual manner.

Id. Moreover, Judge Burns noted that the allegations, which stemmed from conduct occurring within the continuing employment context, were not cognizable on an emotional distress theory and therefore did not support a claim for negligent supervision and retention. This Court's conclusion should be the same.

D.  **Plaintiff Has Failed To State A Claim For Vicarious Liability.**

Plaintiff's only defense of her vicarious liability claim is to argue against a *per se* rule absolving employers of vicarious liability for their employees' sexual assaults. (Pl.'s Opp'n at pp. 19-21.) She cites no authority, however, for the proposition that vicarious liability may never be determined as a matter of law. Indeed, the court in Mullen v. Horton, 700 A.2d 1377 (Conn. App. 1997), upon which Plaintiff relies, explicitly stated that there are cases in which "[a] servant's digression from duty is so clear cut that the disposition of the case is a matter of law." Id. at 1383.

Moreover, the facts of Mullen are clearly distinguishable, and highlight the very unusual circumstances required to support vicarious liability in a case of sexual assault. Mullen involved a consensual sexual relationship between a church parishioner and her priest/psychologist. In denying the defendant's motion to dismiss, the court relied on the fact that the sexual contact had occurred on church property, during counseling sessions from which the church derived financial benefit. Id. at 1380-81, 1382. In sharp contrast, in this case, according to Plaintiff's allegations, the assault occurred 120 miles from campus, in a nonconsensual encounter in no way sanctioned by, or with the potential to benefit, Yale. As such, Plaintiff's situation is nothing like Ms. Mullen's, and instead resembles the numerous cases, cited by Yale in its opening brief, in which courts have found no vicarious liability as a matter of law for sexual assaults. (See Def.'s Mem. at p. 20 and cases cited therein.)

**IV.  Conclusion**

For the reasons set forth above, Yale respectfully requests that this Court enter an Order (1) granting in full its motion to dismiss and (2) granting such other and further relief as the Court deems just and proper.

DEFENDANT,
YALE UNIVERSITY


By_____
   Felix J. Springer (ct 05700)
   Jennifer L. Sachs (ct 20684)
   Day, Berry & Howard LLP
   CityPlace
   Hartford, CT 06103
   Telephone No. (860) 275-0100
   Facsimile No. (860) 275-0343
   fjspringer@dbh.com
   jlsachs@dbh.com
   Its Attorneys

## **CERTIFICATION**

THIS IS TO CERTIFY that, on June 4, 2004, a copy of the foregoing was sent via regular first class mail, postage prepaid, to:

Catherine S. Nietzel, Esq.
Ryan, Ryan, Johnson & Deluca, LLP
8 Fourth Street
P.O. Box 3057
Stamford, CT 06905

Stephen G. Norten, Esq.
Elizabeth J. Grant, Esq.
Paul, Frank & Collins
One Church Street
P.O. Box 1307
Burlington, VT 05401-1307


_____
Felix J. Springer