UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHANIE M. URIE,<br>Plaintiff | )<br>)<br>) |
| v. | ) Case No. 3:04CV94 (RNC)<br>)<br>) |
| YALE UNIVERSITY,<br>Defendant | )<br>)<br>)<br>) |

**FILED**
2004 SEP 27 A 10:38
U.S. DISTRICT COURT
HARTFORD, CT.

## AMENDED COMPLAINT

Plaintiff Stephanie M. Urie complains of defendant Yale University as follows.

### Jurisdiction and Parties

1. Plaintiff Stephanie Urie is a resident of Essex, Vermont.

2. On information and belief, Defendant Yale University ("Yale") is a corporation organized under the laws of Connecticut and with its principal place of business in New Haven, Connecticut. On information and belief, Yale is a private institution of higher education that accepts federal funding.

3. This action arises in part under the law of the United States, 20 U.S.C.A. §§ 1681 et seq. This Court has original jurisdiction over the subject matter of these claims pursuant to 28 U.S.C.A §§ 1331 and 1338.

4. This Court also has jurisdiction on grounds of diversity of citizenship, 28 U.S.C.A. § 1332.

5. This Court has supplemental jurisdiction over the subject matter of Plaintiff's common law claims pursuant to 28 U.S.C.A. § 1367, as those claims are so related to the federal claims that they form part of the same case or controversy.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

## General Allegations

7. In 1996, Yale Divinity School ("YDS"), a graduate level professional school within Yale, hired Gilbert I. Bond ("Bond") as an associate professor of Theology and African American Studies.

8. In his capacity as an associate professor, Bond was encouraged and expected by YDS to engage in mentoring relationships with YDS students.

9. Upon information and belief, in or about 1997, YDS faculty members and administrators became aware that Bond had entered into a sexual relationship with a female YDS student he had taught and was mentoring, and that this relationship included emotional, sexual and physical abuse inflicted by Bond on the student.

10. Upon information and belief, from 1997 to the present, Yale has had knowledge that Bond has engaged in gender discrimination and sexual harassment towards female students. Defendant has at all times since then failed to take reasonable action to prevent the recurrence of gender discrimination, sexual predation and sexual harassment towards Plaintiff, including during periods when she was a student, teaching fellow, affiliate of Yale's Jonathan Edwards College, and an alumna.

11. Plaintiff attended YDS beginning in the fall of 1999 and received her Master's of Divinity degree in May 2002.

12. Plaintiff was employed by Yale as a teaching fellow between September 2000 and May 2003. When Plaintiff served as a teaching fellow, she received instruction from Yale University and participated in course work on subjects related to education, including pedagogy, that was provided by Defendant to teaching fellows. At all times when she served Defendant as a teaching fellow, Plaintiff was a student of Yale. Yale has consistently and publicly taken the position that its teaching fellows are students.

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

387343_v1: 97987-00001     AMENDED COMPLAINT     Page 2 of 13

13. Plaintiff was mentored during her master's program by Bond, who appeared to offer her professional and spiritual guidance and encouragement, serving, in so far as Plaintiff was aware, as a potentially invaluable resource for references, job contacts and professional networking.

14. Upon information and belief, YDS faculty members and administrators were aware of the mentoring relationship between Plaintiff and Bond, and some of those individuals encouraged that relationship.

15. Upon information and belief, certain YDS faculty members and administrators voiced concerns to one another that Bond was using his relationship with Plaintiff to engage in gender discrimination, sexual harassment and sexual predation towards her.

16. Despite the concerns of YDS faculty members and administrators, including members of the YDS Sexual Harassment Committee and those associated with it, YDS failed to warn Plaintiff when she was a student and teaching fellow about Bond's propensity to engage in gender discrimination and sexual harassment. Bond was neither discouraged nor restrained by YDS or Yale from engaging in this propensity.

17. During the period between December 2001 and May 2002, prior to her graduation from YDS, Bond began to groom Plaintiff more intensively by, among other things, taking her out for exceedingly long dinners in remote locations, speaking to her of loving her, telling her that she was his soulmate, and hugging her. These dinners were increasingly scheduled at Bond's insistence, were directed by his theological mentoring agenda, and each lasted six to eight hours. Plaintiff felt compelled to suffer these extreme durations against her will. Plaintiff interpreted Bonds' gestures to be consistent with his status as a Christian pastor, religious professional, and YDS faculty member. YDS faculty and staff told Plaintiff that it was an honor to be afforded the time and attention of a faculty member such as Bond.

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

387343_v1: 97987-00001     AMENDED COMPLAINT     Page 3 of 13

18. During the period between December 2001 and May 2002, Bond made Plaintiff uncomfortable by engaging in sexual innuendo. After one dinner, he hugged her and ran his hand up her back, moving his hand to the inside of her blouse. This unwanted contact made Plaintiff extremely uncomfortable, but she dared not object lest she insult him and lose his support to her as a mentor.

19. Prior to June 2002, Plaintiff was unaware of Bond's propensity to engage in gender discrimination and sexual harassment with other female students whom he had mentored in the past. If Plaintiff had been warned by YDS faculty or staff about Bond's sexual involvement with other female students, Plaintiff would have protected herself from him and discontinued the mentoring relationship. As it was, despite her discomfort, she continued to attempt to harmonize his words and actions with his role as her mentor, YDS professor and religious professional. During her third year at YDS, Plaintiff was a Class President which gave rise to more frequent interactions with YDS faculty and administrators during the period between December 2001 and June 2002 when Bond was grooming her. Despite these frequent interactions with Plaintiff, YDS administrators and faculty members did not warn Plaintiff about Bond's proclivities.

20. In June 2002, Bond asked Plaintiff to meet him in Boston to discuss professional opportunities for Plaintiff. Had Plaintiff been warned by YDS faculty and staff about Bond's propensities and history with female students, she would not have agreed to meet Bond in Boston.

21. While in Boston, Bond manipulated Plaintiff by taking advantage of the trust he had gained from her as her YDS mentor, as well as a YDS religious and academic professional, and coerced Plaintiff into having sexual contact with him.

22. Plaintiff reported Bond's sexual coercion and gender discrimination in Boston to a senior member of the YDS faculty in or about August 2002, when she returned to the Yale University as a teaching fellow and affiliate of Jonathan Edwards College. Through the autumn of

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

387343_v1: 97987-00001   AMENDED COMPLAINT   Page 4 of 13

2002, she reported Bond's sexual coercion and gender discrimination in Boston to members of both the YDS administration and faculty.

23. After receiving this further notice as to Bond's sexual coercion and gender discrimination, YDS administration and faculty did not act to protect Plaintiff, refusing her requests for reasonable forms of protection from Bond while she served Yale as a teaching fellow and an affiliate of Jonathan Edwards College. Yale affirmatively refused to protect Plaintiff so that she could participate in events and programs as an alumna. Nor, after learning of Plaintiff's victimization, did Defendant take measures to protect other YDS female students, including those female students whom Bond was mentoring at the time.

24. Despite notice and concern about Bond's behavior, YDS failed at all times relevant to this Complaint, i.e., both before Plaintiff's graduation and while she served Defendant as a teaching fellow, to enforce Yale's policy prohibiting sexual relations between faculty and students or to enforce its own policy, which recognizes that such relations are "inherently coercive" and presumptively constitute sexual harassment.

25. Plaintiff filed a formal complaint of sexual harassment under the YDS Student Handbook against Bond with YDS in April 2003, and YDS accepted that complaint. On information and belief, YDS accepted her complaint on the basis that Plaintiff was a YDS student.

26. During the 2002-2003 academic year, while Plaintiff served Defendant as a teaching fellow and attended concomitant course work, served Defendant as an affiliate of Defendant's Jonathan Edwards College, and accessed Yale University facilities and programs as an alumna, Bond repeatedly engaged in intimidating behavior towards Plaintiff. During this period, Yale University did not offer and, when requested by Plaintiff, refused to provide her with reasonable protections from Bond.

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

27.  Despite Plaintiff's formal complaint in April 2003 and her requests for reasonable accommodations, Yale refused to take any measures to protect Plaintiff from Bond's continued presence on the YDS campus. Plaintiff was terrified of Bond, who is a large and imposing man. Instead, it was variously suggested to Plaintiff by the Yale Police and YDS administrators that Plaintiff stay off campus as much as possible, stay off campus at night, "run between" the University's buildings, and take long weekends away. Yale Police told Plaintiff not to worry, that she would recognize Bond if she saw him coming towards her by his large Afro style hair.

28.  Plaintiff did not renew her teaching fellowship or return to Yale for the fall 2003 semester because of Bond's continued presence on the YDS campus, her reasonable fear of Bond and Defendant's affirmative refusal to provide her with requested reasonable protections.

29.  Plaintiff has also been precluded from participating in any of the many activities offered by Yale to its alumni and to the general public by her justifiable fear of encountering Bond at those events or on the Yale campus and Defendant's repeated affirmative refusal to offer her requested reasonable protections.

30.  In April 2004, Plaintiff was invited to speak as an alumna at an event sponsored by a Yale student organization. Plaintiff agreed to undertake addressing the student organization and invited guests but requested Yale Police protection. No such protection was provided by Defendant. Plaintiff was forced to retain and pay for her own security guard in order to be on Defendant's campus and attend this event as an alumna. Plaintiff was in fact subjected to harassing, degrading, and intimidating treatment during this outdoor evening Yale University campus event while she spoke to Yale students, and her private security guard was forced to deal with the threatening and unruly behavior exhibited towards her and other women, including female students.

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

387343_v1: 97987-00001     AMENDED COMPLAINT     Page 6 of 13

## COUNT I: TITLE IX, FAILURE TO PROTECT

31.  Plaintiff repeats and realleges each of Paragraphs 1-30 above as though they were set out in full herein.

32.  Plaintiff initially believed that she was safe with Bond because of Yale's policies restricting faculty/student relations and because of Bond's repeatedly avowed personal adherence to professional boundaries as a YDS faculty member and a religious professional. While she had increasing concerns and discomfort based on Bond's behavior between December 2001 and May 2002, she had no other information that would have served as the basis for ceasing contact or exercising more heightened vigilance with Bond.

33.  Upon information and belief, Yale and YDS had actual knowledge of Bond's tendency towards violence, his gender discrimination, and his sexual harassment and predation towards female students.

34.  The faculty and administration of Yale and YDS knew that Bond had earlier engaged in gender discrimination and sexual harassment and predation with one or more female YDS students.

35.  Yale had a duty to protect Plaintiff from the known danger of gender discrimination, sexual harassment, and sexual predation by Bond.

36.  Yale's failure and affirmative refusal to protect Plaintiff at all times prior to June 2002 caused her to be sexually abused by Bond in June 2002.

37.  Plaintiff has suffered physical, emotional, psychological and economic harm as the result of Yale's failure and affirmative refusal to protect her from Bond.

38.  As a direct result of Yale's failure and affirmative refusal to protect Plaintiff at all relevant times, she has, on the basis of gender, been excluded from participation in, been denied the

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

387343_v1: 97987-00001     AMENDED COMPLAINT     Page 7 of 13

benefits of, and has been subjected to discrimination under Yale's educational and alumni programs as well as with respect to her employment and opportunities for employment with Yale.

## COUNT II:  TITLE IX, HOSTILE ENVIRONMENT

39. Plaintiff repeats and realleges each of Paragraphs 1- 38 above as if they were set out in full herein.

40. Yale's failure and refusal to take adequate measures to protect Plaintiff from Bond on campus created a hostile and intolerable educational and work environment prior to and after her graduation.

41. Plaintiff completed her teaching fellow responsibilities in the spring of 2003 but was forced to decline additional educational opportunities, including as a teaching fellow and affiliate of Yale's Jonathan Edwards College, as well as alumna participation for the 2003-2004 academic year because of her reasonable fear and apprehension created by the hostile educational and work environment.  During her matriculation at YDS, Plaintiff had taken a course at Yale Law School and achieved honors.  Despite the encouragement of senior faculty of the law school to apply to that institution, Plaintiff decided against pursuing that educational opportunity based in large part on Defendant's repeated refusal to provide reasonable accommodations to her so that she could safely access Yale's programs and facilities.

42. Plaintiff has suffered physical, emotional, psychological, educational, professional and economic harm as the result of the hostile work and educational environment created by Yale prior to and after her graduation.

## COUNT III: TITLE IX, RETALIATION

43. Plaintiff repeats and realleges each of Paragraphs 1-42 above as if they were set out in full herein.

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

387343_v1: 97987-00001            AMENDED COMPLAINT            Page 8 of 13

44. Bond has retaliated against Plaintiff in the workplace for her participation in the sexual harassment complaint process.

45. Bond has threatened to take legal action against Plaintiff as a result of her statements in filing the complaint and subsequent communications relating to the complaint.

46. Upon information and belief, despite Plaintiff's complaining to Defendant and YDS about Bond's retaliatory treatment and requesting that Defendant and YDS stop him from retaliating against, threatening, and intimidating her, per YDS's standing sexual harassment policy, Defendant took no effective measures to halt Bond's retaliation.

47. Plaintiff has suffered physical, emotional, psychological, educational, professional and economic harm as the result of Yale's failure to take effective action to halt retaliation by Bond against her.

## COUNT IV: FAILURE TO PROVIDE ADEQUATE AND PROMISED SEXUAL HARASSMENT COMPLAINT PROCESS

48. Plaintiff repeats and realleges each of Paragraphs 1- 47 above as if they were set out in full herein.

49. YDS agreed to extend its sexual harassment complaint procedure to Plaintiff in response to her April 2003 complaint because sexual harassment complained of arose out of her student-mentoring relationship with Bond and because Plaintiff remained at Yale as a teaching fellow.

50. Yale has not provided Plaintiff with the complaint procedures promised to her and on which she relied to her detriment in the decision to bring her complaint forward.

51. Yale has failed to implement and comply with its sexual harassment policies as well as the specific procedures Yale promised to provide to Plaintiff.

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

387343_v1: 97987-00001        AMENDED COMPLAINT        Page 9 of 13

52.     As a direct result of Yale's failure to provide the promised sexual harassment complaint procedures to Plaintiff, she has been excluded from participation in, been denied the benefits of, and has been subjected to discrimination under Yale's educational and alumni programs as well as with respect to her employment and opportunities for employment with Yale.

53.     Plaintiff has suffered physical, emotional, psychological, educational, professional and economic harm as the result of the hostile work and educational environment created by Yale as well as by its failure to implement its sexual harassment policies and the sexual harassment complaint process promised to her by the YDS administration.

## COUNT V: NEGLIGENT SUPERVISION AND RETENTION

54.     Plaintiff repeats and realleges each of Paragraphs 1-53 above as if they were set out in full herein.

55.     Upon information and belief, by the fall 1997, YDS administrators and faculty members were aware that Bond had engaged in gender discrimination, sexual harassment and sexual predation in the form of coercive sexual relations with female students.

56.     By the fall 2002, YDS administrators and faculty were aware that Bond had engaged in gender discrimination, sexual harassment and sexual predation in the form of having coerced Plaintiff into sexual contact with him.

57.     Upon information and belief, at all relevant times, YDS administrators and faculty knew that Bond had violated Defendant's policy against sexual relations between faculty and students.

58.     Given Yale's knowledge of Bond's behavior, it was reasonably foreseeable that Bond would engage in gender discrimination and sexual harassment of female students and employees, including Plaintiff prior to her graduation and while she served Defendant as a teaching fellow.

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

387343_v1: 97987-00001                    AMENDED COMPLAINT                    Page 10 of 13

59. Yale consequently had a duty to remove Bond from his position, to prevent him from having close contact with female students, teaching fellows, employees and alumna or to implement other measures that would be effective in protecting female students, teaching fellows, employees and alumna.

60. Yale breached that duty by retaining Bond as an associate professor without limitation upon his activities and by continuing to encourage and expect him to mentor female students, including Plaintiff.

61. As a result of Yale's negligent supervision and retention of Bond, Plaintiff has suffered physical, emotional, psychological, educational, professional and economic harm.

## COUNT VI: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

62. Plaintiff repeats and realleges each of Paragraphs 1- 61 above as if they were set out in full herein.

63. Yale knew or should have known that each of the following actions and omissions involved an unreasonable risk of causing Plaintiff to suffer emotional distress while she was a student prior to her graduation and while she was a student as a teaching fellow thereafter: (a) failing to enforce its policy with respect to faculty-student sexual relations;  (b) failing to protect female students, including Plaintiff, from Bond;  (c) failing to warn Plaintiff about Bond;  (d) failing to follow the sexual harassment complaint procedures that it had promised to utilize in processing Plaintiff's complaint;  (e) failing to provide Plaintiff with reasonable accommodations after her complaint against Bond and after her request for such protections was repeatedly conveyed to Defendant;  (f) providing Bond with a copy of Plaintiff's medical records and a copy of her factual summary of the assault against YDS policy and after expressly and specifically promising her confidentiality;  and (g) failing to remove Bond from his position.

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

387343_v1: 97987-00001            AMENDED COMPLAINT                    Page 11 of 13

64.     Yale knew or should have known that its actions involved an unreasonable risk of causing Plaintiff to suffer emotional distress while she while she was a student as a teaching fellow when: (a) it was variously suggested to Plaintiff by the Yale Police and YDS administrators that Plaintiff stay off campus as much as possible, stay off campus at night, "run between" the University's buildings, and take long weekends away; and (b) Yale Police told Plaintiff not to worry, that she would recognize Bond if she saw him coming towards her by his large Afro style hair.  These responses, comments and direction to her reasonably caused Plaintiff to feel humiliated, anxious, endangered, fearful and degraded.

65.     Yale knew or should have known that its actions involved an unreasonable risk of causing Plaintiff to suffer emotional distress while she while she was a student as a teaching fellow when she encountered Bond without being provided any protection by Defendant.  Plaintiff did in fact encounter Bond during times when she participated in academic and university programs as a student and alumna during the 2002-2003 academic year.  As a result of these unprotected encounters with Bond, Plaintiff was placed in jeopardy and great emotional distress.

66.     Yale knew or should have realized that the emotional distress suffered by Plaintiff might result in illness or bodily harm.

67.     As a consequence of Yale's conduct, Plaintiff has suffered emotional distress resulting in illness.

## COUNT VII:  VICARIOUS LIABILITY

68.     Plaintiff repeats and realleges each of Paragraphs 1-67 above as if they were set out in full herein.

69.     Bond committed intentional sexual assault when he engaged in coercive sexual contact with Plaintiff.

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

70.  One of the purposes of Bond's meeting Plaintiff in Boston in June 2002 was to further his activities as Plaintiff's mentor, i.e., to discuss with her a job prospect at Harvard University, with respect to which Plaintiff believed Bond could serve as an invaluable reference, and to speak about work that he himself was undertaking at Yale for which he required research assistance. As a result, Plaintiff's conduct occurred in the course and scope of his employment with Yale and with a purpose to serve his employer.

71.  Yale is therefore vicariously liable for Bond's intentional sexual assault of Plaintiff.

WHEREFORE, Plaintiff Stephanie Urie demands judgment against Defendant Yale University and an award of compensatory damages, punitive damages, attorney's fees, and costs, as well as all other relief to which she may be entitled, totaling in excess of $75,000.00 (Seventy-Five Thousand and 00/100 Dollars).

### Demand for Jury Trial

Plaintiff hereby demands trial by jury with respect to all claims so triable.

DATED:    Burlington, Vermont this 24th day of September, 2004.

PAUL FRANK + COLLINS P.C.
One Church Street
P.O. Box 1307
Burlington, VT 05401-1307
(802) 658-2311
Attorneys for Plaintiff Stephanie M. Urie

By: _____
Stephen G. Norten, Esq.
Connecticut Federal Bar Number: ct25931
Email: *snorten@pfclaw.com*
Elizabeth J. Grant, Esq.
Connecticut Federal Bar Number: ct25932
Email: *egrant@pfclaw.com*

Catherine S. Nietzel, Esq. (CT 05255)
RYAN, RYAN, JOHNSON & DELUCA, LLP
P.O. Box 3057
80 Fourth Street
Stamford, CT 06905
Local Counsel for Plaintiff Stephanie M. Urie

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

387343_v1: 97987-00001     AMENDED COMPLAINT     Page 13 of 13

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHANIE M. URIE,<br>      Plaintiff<br><br>      v.<br><br>YALE UNIVERSITY,<br>      Defendant | )<br>)<br>)  Case No.  3:04CV94 (RNC)<br>)<br>)<br>)<br>)<br>) |

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of *Plaintiff's Amended Complaint* was sent by first class mail, postage prepaid, to the following counsel of record, this 24th day of September, 2004

    Felix J. Springer, Esq.
    DAY, BERRY & HOWARD, LLP
    CityPlace
    Hartford, CT  06103

Dated at Burlington, Vermont this 24th day of September, 2004.

                                  PAUL FRANK + COLLINS P.C.
                                  One Church Street
                                  P.O. Box 1307
                                  Burlington, Vermont  05402-1307
                                  Telephone No.: (802) 658-2311
                                  Fax No.: (802) 658-0042
                                  Attorneys for Plaintiff Stephanie Urie

                By:      /s/ Stephen G. Norten
                                  Stephen G. Norten, Esq.
                                  Connecticut Federal Bar Number: ct25931
                                  Email: *snorten@pfclaw.com*

387485_v1: 97987-00001