IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

STEPHANIE M. URIE, )
         Plaintiff, ) Civil Action
     ) Case No. 3:04-cv-00094-RNC
    v. )
     )
YALE UNIVERSITY, )
        Defendant. )
_____ )

FILED
2004 DEC -1 A II: 18
U.S. DISTRICT COURT
HARTFORD, CT.

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff Stephanie M. Urie, by and through her attorneys, Paul, Frank + Collins P.C., hereby opposes Defendant Yale University's Motion to Dismiss the Amended Complaint as follows.

### MEMORANDUM OF LAW

The pleading defects initially identified by this Court have now been cured because the Amended Complaint makes clear that: (a) Bond's course of conduct in harassing Ms. Urie began before she graduated from Yale Divinity School ("YDS"), [Amended Complaint at ¶¶ 15-17]; (b) in any event, Ms. Urie continued to be a student of Yale University ("Yale") after she graduated from YDS, in that she was taking a course in pedagogy, continuing her studies as a teaching fellow, and accessing Yale's educational programs and activities in other capacities, [Amended Complaint at ¶¶ 12, 26]; and (c) Ms. Urie does affirmatively claim that Yale has in fact denied her access to alumni programs, [Amended Complaint at ¶¶ 27-30].

Accordingly, Ms. Urie's Title IX claims are not preempted by Title VII. At a minimum, she has claims under both statutory schemes, and the courts have been unanimous in holding that individuals with both student status and employee status can sue under both enactments. Notwithstanding Yale's interpretation, this Court's ruling on preemption is very limited, holding only that private claims for employment discrimination brought under Title IX are preempted by

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

Title VII. *See* Ruling and Order, dated August 26, 2004, at 7. No such employment claim is being pressed here, as the Amended Complaint makes clear.

Finally – while any reconsideration of this Court's earlier ruling is rendered unnecessary by the additional and clarified allegations of the Amended Complaint – plaintiff also points out that Title IX is not limited to teacher/student harassment and that Yale's invitation to construe the statute so narrowly should be rebuffed. This conclusion is only highlighted by Yale's second motion to dismiss, in which it is driven to argue for an even <u>narrower</u> interpretation of Title IX, effectively urging that the enactment protects only against teacher/student-enrolled-in-a-degree-program harassment! This needle's-eye interpretation of the statute – an enactment that is to be <u>liberally</u> construed – should be firmly rejected, and the motion on which it is based should be denied.

## I.    Introduction

Yale's latest smoke and mirrors approach asks this Court draw a bright line at Ms. Urie's graduation from YDS and consider the harassment that occurred before this graduation (from one of Yale's schools) as separate and apart from the harassment that occurred during her continuing studies at Yale. First, however, YDS's award to Ms. Urie of a degree in divinity studies had no impact whatsoever on her status as a <u>student of Yale</u>, as the Amended Complaint makes clear. Ms. Urie continued to be: (a) a student in Yale's Teaching Fellowship Program, (b) a student in Yale's course in Pedagogy, (c) a former Class President called upon for ceremonial occasions, (d) an Affiliate of the Jonathan Edwards College of Yale University, (e) an alumna, (f) a graduate invited to apply for further graduate study at Yale Law School, and (g) a member of the public,[1] [Amended Complaint at ¶¶ 12, 23, 26, 30]. In all these capacities, she attempted to access the educational programs and activities of Yale.

---

[1] Plaintiff submits that even a member of the public who was denied participation in a Yale seminar on the basis of gender alone would have a viable Title IX claim.

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

Second, Bond began his predation while Ms. Urie was a YDS graduate student in the guise of "mentoring" and continued it after she was awarded a YDS degree (but was soldiering on as a Yale student) – an unbroken course of conduct that culminated in his sexual assault of her in June 2002. Bond's conduct simply cannot be broken down into individual and discrete acts; nor can Ms. Urie's continuing status as a Yale student be artificially truncated by her graduation from YDS.

These allegations, set out clearly in the Amended Complaint, are more than sufficient to state a claim under Title IX. Plaintiff's negligent infliction of emotional distress claim is also sufficient, given her allegation that she was pursuing educational opportunities at Yale during the time period relevant to that claim. Finally, Ms. Urie's allegations also support her claim that Yale is vicariously liable for Bond's assault, because Yale cannot establish at this early stage in the litigation that Bond was not motivated, at least in part, by the purpose to serve his employer. Accordingly, Yale's second Motion to Dismiss should be denied in its entirety, particularly in light of the extremely powerful, negative presumption it would have to surmount.

## II.    Motions to Dismiss Are Disfavored and Rarely Granted, Particularly in Civil Rights Actions

As explained in Plaintiff's Opposition to Yale's original Motion to Dismiss, motions to dismiss under Rule 12(b)(6) are looked upon with disfavor and seldom granted. *In re Nortel Networks Corp. Securities Litigation*, 238 F.Supp.2d 613, 621 (S.D.N.Y. 2003) ("It has been said that '[t]he motion to dismiss for failure to state a claim is disfavored and is seldom granted.'") (*quoting Bower v. Weisman*, 639 F.Supp. 532, 539 (S.D.N.Y. 1986)); *Bapat v. Connecticut Dept. of Health Services*, 815 F.Supp. 525, 529 (D.Conn. 1992) ("Dismissal for failure to state a claim is generally disfavored by the courts."). "The Rule 8 standard contains 'a powerful presumption against rejecting pleadings for failure to state a claim.'" *Gilligan v. Jamco Development Corp.*, 108

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

Plaintiff's Opposition to Defendant's Motion to Dismiss Amended Complaint           Page 3 of 15

F.3d 246, 249 (9th Cir. 1997) (*quoting Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 386 (5th Cir.1985)).

That presumption against dismissal is even more powerful in civil rights litigation, "'where the law is in a continuing state of flux and where the facts in issue are often quite complex.'" *Mahoney v. National Organization for Women,* 681 F.Supp. 129, 135 (D.Conn. 1987) (*quoting Granville v. Hunt,* 411 F.2d 9, 11 (5th Cir.1969)); *see also Sealed v. Sealed,* 332 F.3d 51, 55 (2d Cir. 2003) (noting that the rule disfavoring 12(b)(6) dismissals "applies with particular force" in a civil rights action); *Rodriguez v. California Highway Patrol,* 89 F.Supp.2d 1131, 1135 (N.D.Cal. 2000) ("In particular, '[c]ivil rights complaints are to be liberally construed,'") (*quoting Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.1992)); *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991) (holding that the standard for dismissing a complaint under Rule 12(b)(6) is "applied with particular strictness when the plaintiff complains of a civil rights violation").

The question on a motion to dismiss is not whether the plaintiff's claims will ultimately be successful, but whether the plaintiff is entitled to offer evidence to support her allegations. *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669 (2d Cir.1995) (emphasis added); *see also Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) ("A court must not consider whether the claim will ultimately be successful, but should merely 'assess the legal feasibility of the complaint.'"). "Common sense requires that courts remember the purpose of a pleading--to state a claim and provide adequate notice of that claim. A pleading is not a trial and plaintiffs are not required to marshal their evidence and sustain a verdict at this stage." *Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.,* 253 F.Supp.2d 262, 267 (D.Conn. 2003) (*citing Gabriel Capital, L.P. v. NatWest Finance, Inc.,* 122 F.Supp.2d 407, 411 (S.D.N.Y. 2000)).

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

As will be demonstrated below, Plaintiff's Amended Complaint adequately states a claim for relief with respect to each of the counts that Yale asks this Court to dismiss, particularly under the liberal pleading provisions of Federal Rule of Civil Procedure 8(a). Accordingly, Yale's motion to dismiss Counts I-III, VII and VIII of Plaintiff's Amended Complaint should be denied.

### III. Plaintiff Is a Member of the Class Protected by Title IX

The initial pleading deficiencies addressed by the Court with respect to Title IX have been cured because the Amended Complaint makes clear that: (a) the harassment began while Ms. Urie was still a student of YDS, (b) the harassment continued while Ms. Urie continued as a student of Yale after her graduation from YDS, and (c) Yale has denied Ms. Urie access to educational programs and activities in her capacity as a YDS alumna. For purposes of Yale's motion, these allegations must be accepted as true. The following analysis establishes that Ms. Urie was protected by Title IX throughout her entire time at Yale.

#### A. Title IX Protects "Persons," Not "Students Enrolled in Degree Programs"

Because Ms. Urie's additional and clarified allegations must be accepted as true for present purposes, Yale's remaining target is Title IX itself, and it now argues that the reach of the statute is even more restrictive: rather than teacher/student harassment, as contemplated by Yale in its first motion to dismiss, it now contends that this Court must construe the statute as applicable only to teacher/student-enrolled-in a-degree-program harassment. Of course, defendant has not and cannot cite any authority in support of this specious proposition.

Title IX does not even speak of "students;" much less does it contemplate a requirement that a gender discrimination plaintiff must have been an "student enrolled in a degree program" before she can sue under Title IX; no such limitation should be judicially appended. The statute provides simply that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

program or activity receiving Federal financial assistance." 20 U.S.C.A. § 1681(a) (emphasis added).

More than twenty years ago, the United States Supreme Court held that Title IX should be given "a sweep as broad as its language." *North Haven Board of Educ. v. Bell*, 456 U.S. 512, 521 (1982). The *Bell* court addressed the issue whether regulations issued by the Department of Health, Education and Welfare relating to employment in federally-funded educational institutions were authorized by Title IX, and it concluded that they were. Beginning with the statutory language of Title IX, the court noted that Title IX's "broad directive that 'no person' may be discriminated against on the basis of gender, appears, on its face, <u>to include employees as well as students</u>." *Id.* at 520 (emphasis added). The *Bell* court then conducted a lengthy review of the legislative history of the statute, and concluded that "employment discrimination comes within the prohibition of Title IX." *Id.* at 530. Finally, the court observed that Congress had refused to pass bills that would have amended Title IX to limit its coverage of employment discrimination. *Id.* at 534. One bill would have added language stating that "nothing in [Title IX] shall apply to employees of any educational institution subject to this title." *Id.* Another would have changed the meaning of the term "education program or activity" and limited it to "curriculum or graduation requirements of the institutions." *Id.* at 535. Both amendments were rejected by Congress. *Id.* The *Bell* court clearly and unambiguously decided that Title IX covers employees, and the same conclusion should be reached here.

Even putting to one side the above history and analysis, Congress's election not to include words of limitation like "student" in Title IX reflects its intent to make the statutory protections far broader than Yale argues. "[T]he Supreme Court has consistently recognized courts' 'duty to refrain from reading a phrase into the statute when Congress has left it out.'" *McMellon v. United States*,

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

Plaintiff's Opposition to Defendant's Motion to Dismiss Amended Complaint    Page 6 of 15

387 F.3d 329, 358 (4th Cir. 2004) (*quoting Keene Corp. v. United States,* 508 U.S. 200, 208 (1993)); *U.S. v. Health Possibilities, P.S.C.,* 207 F.3d 335, 339-40 (6th Cir. 2000) ("If Congress wanted to limit the consent requirement to the period before the United States makes its initial intervention decision, we presume that it knew the words to do so."); *Bates v. United States,* 522 U.S. 23 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.").

Certainly, after graduation from YDS, Ms. Urie enjoyed protections under Title IX as a Yale student in its Teaching Fellow program, a Yale student in a course on Pedagogy, a Jonathan Edwards College of Yale University Affiliate, an alumna, and, finally, a member of the public. [Amended Complaint, ¶¶23-30]. It is illogical and disingenuous of Yale to argue that it should not protect a female with such responsibilities and rights who attempts to access the facilities and education services of the University. Indeed, as Yale opens its doors to the public for educational programs or activities, it cannot discriminate against members of the public on the basis of gender.

As a matter of public policy, the mere fact that Ms. Urie happened to have accepted a teaching fellowship immediately after graduation from YDS (the same position she had held prior to graduation) and while she was continuing to pursue educational opportunities at Yale does not and must not automatically relieve defendant of its responsibilities toward her under Title IX. Otherwise, members of the general public wishing to attend an evening seminar at Yale would have Title IX rights superior to Ms. Urie's.

All that is required to plead a Title IX claim is for the plaintiff to have been in the United States and "excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

That is precisely the allegation made by Ms. Urie, and Yale's flailing attempts at recasting the statute should be ignored.

### B. In the Alternative, Ms. Urie Was a Student Enrolled in a Degree Program When the Harassment Began, and This Clarified Fact Would Support Her Title IX Claims

Even if Ms. Urie were somehow required to be a "student enrolled in a degree program" before the remedies afforded by Title IX could be afforded to her, she was such a student when the course of harassing conduct began. Although Yale predictably seeks to impose a before-and-after bright line upon the conduct at issue, the course of misconduct here was unbroken, and Yale cites to no authority for the fragmented position it advances.

### C. In the Further Alternative, this Court Should Reconsider Its Ruling that Title VII Preempts Title IX with Respect to Employment Discrimination Claims

In its ruling dismissing Ms. Urie's original Title IX claims, this Court noted that "the Second Circuit has not decided whether Title VII preempts private claims for employment discrimination under Title IX." *See* Ruling and Order, dated August 26, 2004, at 7. Ms. Urie respectfully suggests that while this precise issue has not yet reached the Second Circuit Court of Appeals, the court has indicated its opinion that Title IX applies to discrimination claims by both students and employees. *See Murray v. New York University College of Dentistry*, 57 F.3d 243 (2d Cir. 1995). Although the plaintiff in *Murray* was a student, the court – in discussing the scope of Title IX – stated:

> Title IX has been construed to prohibit gender discrimination against both students enrolled in federally supported education programs and employees involved in such programs. An aggrieved individual has a private right of action for injunctive relief or monetary damages.
>
> In reviewing claims of discrimination brought under Title IX by employees, whether for sexual harassment or retaliation, courts have generally adopted the same legal standards that are applied to such claims under Title VII.

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

*Id.* at 248 (emphasis added, citations omitted). The *Murray* court relied in part upon *Preston v. Commonwealth of Virginia*, 31 F.3d 203 (4th Cir. 1994), one of the cases relied upon by plaintiff in her Opposition to the Motion to Dismiss her original Complaint. Subsequent decisions from Second Circuit district courts have also followed this construction. *See, e.g., A.B. v. Rhinebeck Central High School Dist.*, 224 F.R.D. 144, 153 (S.D.N.Y. 2004) ("[T]his Court finds that Title IX was intended by Congress to function as an additional safeguard against gender-based discrimination in the context of federally-funded education programs, notwithstanding the possibility of other available remedies, including without limitation those available under Title VII."). Given the Second Circuit's clear approval of this line of cases, Ms. Urie respectfully requests that this Court reconsider – only if necessary, in light of curative allegations of the Amended Complaint – its previous decision to follow the contrary position taken in *Lakoski v. James*, 66 F.3d 751 (5th Cir. 1995) and its prodigy.

## IV.   Ms. Urie Has Adequately Stated the Title IX Claims Challenged by Yale

### A.   Yale Failed to Protect Ms. Urie from Sexual Harassment and Assault

In her Amended Complaint, Ms. Urie has stated a sound "failure to protect" claim for relief under Title IX. While Yale argues the contrary, Ms. Urie alleges that defendant failed to protect her from predation by Bond while she was a student, a predation which culminated in Bond's sexual assault on her in June 2002. [Amended Complaint, ¶¶32-38]. As a direct result of Bond's predation and assault, Ms. Urie was forced to cut her ties with YDS, forgo her teaching fellowship, and, as alleged in the Amended Complaint, she has "been excluded from participation in, been denied the benefits of, and has been subjected to discrimination under Yale's educational and alumni programs as well as with respect to her employment and opportunities for employment with Yale." [Amended Complaint, ¶¶23-30, 38]. As one specific example, Ms. Urie was forced to bypass the

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

opportunity to attend Yale Law School because of the threatening environment on the Yale campus created by the continued presence of Bond and Yale's refusal to provide her with reasonable accommodations. [Amended Complaint, ¶41]. Yale's Motion to Dismiss Count I of the Amended Complaint should be denied.

### B. Yale's Conduct Created A Hostile Environment

#### 1. The Amended Complaint States a Claim

The Amended Complaint also states a viable hostile environment claim under Title IX. Although Yale asserts that Ms. Urie has failed to allege harassment sufficiently severe to create a hostile environment, this argument fails because Yale myopically limits its analysis to the allegations of Bond's conduct prior to June 2002. The hostile environment alleged by Plaintiff was created not only by that conduct, but also by Bond's sexual assault in June 2002, his repeated intimidating behavior toward her after her complaint, and his retaliation against her by threatening a lawsuit, none of which Yale took any measures to prevent. Yale is painfully aware that it is well-established that a plaintiff forced repeatedly to encounter someone who has sexually assaulted her suffers from a hostile environment sufficient to state a claim under Title IX. . [Amended Complaint, ¶¶23-30]. *See Kelly v. Yale University*, 2003 WL 1563424, *3 (D. Conn. March 26, 2003) (holding that "further encounters, of any sort, between a rape victim and her attacker could create an environment sufficiently hostile to deprive the victim of access to educational opportunities provided by a university"); *Patricia H. v. Berkeley Unified School Dist.*, 830 F.Supp. 1288 (N.D. Cal. 1993) (holding that students were entitled to present Title IX hostile environment claim to a jury where their education was "tainted by fear" of the teacher who had previously molested them even though molestations had occurred outside of teacher-student context).

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

Plaintiff's Opposition to Defendant's Motion to Dismiss Amended Complaint                Page 10 of 15

### 2. Even Assuming that Title VII Preempts Title IX with Respect to Employment Discrimination Claims, No Court Has Held that Title VII Has Any Preemptive Effect Where the Claimant Has Dual Status as Student and Employee

Yale incorrectly and without support contends that – even though Ms. Urie has alleged that she was denied access to and discriminated against under Yale's education programs during the relevant time periods – Title VII preempts any claim she might have under Title IX because Plaintiff became a teaching fellow (once again) in the Fall of 2002. Such is not the law. In cases where the claimant has both student status and employee status, courts have uniformly held that the plaintiff could bring *both* Title IX and Title VII claims. *See, e.g., Mandsager v. University of North Carolina at Greensboro*, 269 F.Supp.2d 662 (M.D.N.C. 2003) (denying defendant's motion to dismiss Title VII and Title IX claims where plaintiff was graduate student, graduate assistant, clinical supervisor and teaching assistant at time of harassment); *Bucklen v. Rensselaer Polytechnic Institute*, 166 F.Supp.2d 721 (N.D.N.Y. 2001) (reaching the merits of both Title VII and Title IX claims brought by plaintiff who was both teaching assistant and graduate student). No court has ever suggested any construction that would limit a plaintiff with a dual status to her Title VII remedies.

Here, in deciding to follow *Lakoski v. James*, 66 F.3d 751 (5th Cir. 1995), this Court did not hold that a Title IX claim is always preempted by an available Title VII claim. It merely held, as in *Lakoski*, that where the plaintiff is an employee *and not a student*, the plaintiff was obliged to seek a remedy under Title VII rather than Title IX, because Title IX was simply not available to employees. *See Lakoski*, 66 F.3d at 758 ("Title VII offers valuable rights to victims of employment discrimination. We are not persuaded that Congress offered Title IX to employees of federally funded educational institutions . . . ."). Given that Ms. Urie has now clearly alleged that she was denied educational opportunities as a Yale student, the *Lakoski* analysis is inapplicable.

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

The relevant inquiry here is whether the claim at issue arose out of Ms. Urie's educational relationship with Yale or her "employment" relationship. *See Stilley v. University of Pittsburgh*, 968 F.Supp. 252 (W.D. Pa. 1996). In *Stilley*, the plaintiff had been both a doctoral candidate at the university and a research assistant for a professor who sexually harassed her. The plaintiff alleged that when she rejected his advances, he retaliated by, among other things, using his position as chair of her dissertation committee to sabotage her dissertation overview. *Id.* at 257. She bought Title VII and Title IX claims against the advisor and the university. In discussing the Title VII claims, the court held that "the Title VII inquiry must focus only on the employer-employee relationship." *Id.* at 261. "All issues pertaining to the completion of plaintiff's dissertation relate to plaintiff's role as a student and not as an employee." *Id.* It therefore declined to consider those allegations with respect to the Title VII claim. *Id.* The court then rejected the Title VII claims as untimely, but allowed the plaintiff to proceed with her Title IX action. *Id.* at 267.

### 3.     Ms. Urie Is Not Attempting to Vindicate Rights Protected by Title VII

Even assuming that all of the above precedent is incorrect, this Court has held that the relevant inquiry in the analysis "is whether the claims advanced under Title IX seek to vindicate rights protected by Title VII." Ruling and Order, dated August 26, 2004, at 7 n.2. Here, the facts alleged in the Amended Complaint demonstrate that Ms. Urie's hostile environment claim arises solely from her <u>attempts to continue her education at Yale</u>, not from her status as an employee of Yale. Plaintiff has been forced to forgo and to abandon significant educational opportunities and activities, including activities as an alumna, affiliate, and former class president, offered by Yale as the direct result of Bond's conduct and Yale's inadequate response to that conduct. [Amended Complaint, ¶¶23-30, 41]. Yale's Motion to Dismiss Count II of the Amended Complaint should be denied.

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

### V. Plaintiff Has Stated a Claim for Retaliation

Yale's arguments relating to Ms. Urie's retaliation claim are repetitive of those made for the failure to protect and hostile environment claims. For the same reasons as those set forth above, therefore, Yale contentions should be rejected and the motion to dismiss Count III denied.

### VI. The Amended Complaint States a Viable Claim for Negligent Infliction of Emotional Distress

Although this Court dismissed Ms. Urie's negligent infliction of emotional distress claim because the allegations of the original pleading left it "based entirely on defendant's conduct while she was an employee," *see* Ruling and Order, dated August 26, 2004, at 9, the Amended Complaint cured this deficiency in two ways.

First, as set forth above, Ms. Urie was not just an "employee" of Yale,[2] she was a student and a participant in Yale's educational programs and activities, opportunities she was forced to forgo because of the tortious conduct of both Bond and Yale. Second, the Amended Complaint makes clear that Yale's tortious conduct began before Ms. Urie's graduation, and while she was a student-enrolled-in-a-degree-program, when Yale failed to protect her from sexual predation and eventual assault by Bond.

Contrary to Yale's spurious contentions, Ms. Urie is not "tacking on" these allegations; instead, in response to the Court's specification of deficiencies, she has simply clarified the facts that gave rise to this claim. Moreover, it is clear from the Amended Complaint that the negligent infliction of emotional distress claim does not arise out of Ms. Urie's "employment" relationship with Yale, but from her strong educational relationship with YDS and Yale as a student, an alumna,

---

[2] Although plaintiff has alleged that Ms. Urie was "employed" by Yale as a teaching fellow, it is not at all clear whether she was an "employee" in the eyes of the law. Yale has repeatedly taken the position that teaching fellows are students, [Amended Complaint at ¶ 12]. Similarly, Ms. Urie held teaching fellow appointments during her years at YDS, as well, but those appointments did not necessarily make her a Yale "employee."

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

Plaintiff's Opposition to Defendant's Motion to Dismiss Amended Complaint    Page 13 of 15

an affiliate, and former class president. [Amended Complaint, ¶¶23-30, 41]. Yale's Motion to Dismiss Count VI should be denied.

### VII. Plaintiff has Stated a Viable Claim for Vicarious Liability

Although Yale again seeks the dismissal of the vicarious liability count, contending that "plaintiff cannot credibly maintain that [Bond] was motivated at least in part to serve his employer," whether the allegation is "credible" or not is for a jury to decide, not Yale. All that is required at the pleading stage of this case is that the elements of the claim be stated. Taking them as true, as this Court (and Yale) must, Ms. Urie is entitled to move forward with this claim and pursue discovery on the issue of what Bond's motives were when he lured Ms. Urie, a student he had been mentoring with the knowledge and approval of YDS, to Boston. *See Kilduff v. Cosential, Inc.*, 298 F.Supp.2d 12, 20 (D. Conn. 2003) ("[I]t would be contrary to Connecticut law to adopt a *per se* rule against vicarious liability in cases involving sexual assault. Some factual inquiry is mandated by Connecticut law . . . ."). Yale's Motion to Dismiss Count VII should be denied.

### VIII. Conclusion

The Amended Complaint includes all of the allegations necessary to support Ms. Urie's Title IX, negligent infliction of emotional distress, and vicarious liability claims. Accordingly, Yale's Motion to Dismiss the Amended Complaint should be denied in its entirety.

DATED:   Burlington, Vermont this 30th day of November, 2004.

Respectfully submitted,

PAUL FRANK + COLLINS P.C.
One Church Street
P.O. Box 1307
Burlington, VT 05401-1307

By: _____
Stephen G. Norten, Esq.
Elizabeth J. Grant, Esq.

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK

Plaintiff's Opposition to Defendant's Motion to Dismiss Amended Complaint   Page 14 of 15

Robert C.E. Laney, Esq.
RYAN, RYAN, JOHNSON & DELUCA, LLP
P.O. Box 3057
80 Fourth Street
Stamford, CT 06905

Attorneys for Plaintiff Stephanie Urie

## CERTIFICATION

THIS IS TO CERTIFY that on November 30 2004, a copy of the foregoing was sent via regular first class mail, postage pre-paid, to:

Felix J. Springer, Esq.
Melissa L. Bellavia, Esq.
DAY, BERRY & HOWARD, LLP
CityPlace I
185 Asylum Street
Hartford, CT  06103

_____
Stephen G. Norten, Esq.

395145_v2: 97987-00001

PAUL, FRANK & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
BURLINGTON, VERMONT
PLATTSBURGH, NEW YORK